IOWA PORTLAND CEMENT CO. v. LAMANDOLA.

(Circuit Court of Appeals, Eighth Circuit. November 2, 1915.)

No. 4384.

1. MASTER AND SERVANT ⊂⇒238—MASTER'S LIABILITY FOR INJURY TO SERVANT —CONTRIBUTORY NEGLIGENCE.

An employé is not required always and under all circumstances to adopt the less dangerous of two methods of doing his work; but the test in all cases is whether, in view of all the facts and circumstances of the case, it would be the exercise of reasonable prudence to do the work as done, even if it were perhaps a more dangerous way than one which might have been chosen.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 743–748; Dec. Dig. ⊂⇒238.]

2. MASTER AND SERVANT ⊂⇒235—MASTER'S LIABILITY FOR INJURY TO SERVANT —CONTRIBUTORY NEGLIGENCE.

A primary duty is imposed upon the master to use reasonable care to furnish the servant a reasonably safe place to work in and reasonably safe appliances to work with, and the servant may rely upon the performance of such duty, and is not required at the outset to make a personal inspection, or to exercise any degree of diligence to affirmatively ascertain whether it has been performed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. ⊂⇒235.]

3. MASTER AND SERVANT ⊂⇒204—ACTION FOR INJURY TO SERVANT—DEFENSES —ASSUMPTION OF RISK.

Under Iowa Code Supp. 1907 and 1913, § 4999a2, which requires the owner of any manufacturing or other establishment where machinery is used to properly guard all cogs, gearing, etc., as construed by the Supreme Court of the state, an owner who has failed to comply with such requirement cannot invoke the doctrine of assumption of risk against an employé injured in such machinery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. ⊂⇒204.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. COURTS ⊂⇒366—FEDERAL COURTS—FOLLOWING STATE DECISIONS.

Where the highest judicial tribunal of a state has placed a construction upon its statutes, the federal courts must follow that construction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⊂⇒366.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

In Error to the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Action at law by Tony Lamandola against the Iowa Portland Cement Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Jesse A. Miller, of Des Moines, Iowa (J. D. Wallingford and Oliver H. Miller, both of Des Moines, Iowa, on the brief), for plaintiff in error.

Chandler Woodbridge, of Des Moines, Iowa (James P. Hewitt, of Des Moines, Iowa, on the brief), for defendant in error.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

ADAMS, Circuit Judge. Lamandola, the plaintiff below, sued the Cement Company for damages alleged to have been sustained by him through its negligence. The defense was a denial of the negligence and pleas of contributory negligence and of assumption of the risk. A recovery was had by him, and the Cement Company prosecutes this writ of error.

The main facts are these: The Cement Company was engaged in the business of manufacturing cement, and for this purpose it required intense heat. To produce this, it installed a plant of this kind: It constructed several large iron or steel cylinders 6 feet in diameter by 35 feet in length, with mechanism to revolve them at approximately 1½ revolutions per minute. Connected with each of these cylinders was a heating apparatus, by means of which heat was carried into and through them for the purpose of drying crushed or ground coal introduced into one end of them. As the cylinders revolved, coal was kept moving through them, from the receiving end, throughout the entire length, until it was finally emptied at the other end in the form of pulverized coal or dust, ready to be blown into the furnaces to intensify the heat. These cylinders were made to revolve by an electrical contrivance connected with them by means of cogwheel gearing. This gearing was located underneath the cylinders, upon a cement foundation, and was not covered or protected by any guard or shield. Underneath it was a hollowed-out space or pit which was kept filled with oil, into which one of the coacting revolving cogwheels was kept constantly immersed. Coal dust accumulated in this pit, and it was the duty of plaintiff to clear it out when necessary and keep it supplied with oil. As he was in the act of removing the accumulated dust on the occasion of his injury, with such instrumentalities as were available to him, his hand was caught in the gearing and badly injured.

There was evidence tending to show that defendant failed to furnish plaintiff a reasonably safe and fit implement with which to clean out the oil pit. This was disputed. There was evidence tending to show that it was impracticable to cover or protect the gearing with a guard. This was disputed. There was evidence tending to show that if the plaintiff had stopped the running of the machinery before he attempted to clean out the pit, or had done the work in some different way and with a somewhat different implement, it could have been safely done and evidence to the contrary. There was also evidence tending to show that it was not usual or practicable to stop the running of the machinery for the purpose of cleaning the pit. On evidence of this kind, which, it is thought, is sufficiently detailed for the purpose of disposing of the assignments of error relied on for a reversal, the cause was submitted to the jury by the late Judge McPherson in a comprehensive charge, covering in an able way the several phases of fact and law applicable to it.

[1] To this charge no exceptions were taken by either party. The only exceptions of any kind taken by the defendant were to the refusal by the court to give certain instructions to the jury in the lan-

guage of the draftsman. Those relied on in the brief for a reversal of the judgment are as follows:

(1) "You are instructed that where there are two ways or methods of doing a thing, and one way is safe or comparatively safe, and the other way is dangerous, or more dangerous, it is a want of ordinary care on the part of the man for him to select and use the more dangerous method, and if in this case you find that the plaintiff could have stopped the drier in question, that is, stopped the machinery of the drier for a few minutes, and while the machinery was not in motion have cleaned out the coal dust which he claims he desired to clean out, but instead of doing this he proceeded to attempt to clean out said coal dust while said machinery was in motion, then you will find that the plaintiff was guilty of contributory negligence and he cannot recover in this case."

(2) "You are instructed that, where there is a comparatively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is a want of ordinary care for him to select and use a more dangerous way. Applying this rule to this case, if you find that the plaintiff was injured while cleaning or attempting to clean the pit beneath the gear wheels in question, and you further find that there was a safer method which he as a reasonably prudent man could have used to clean the pit, to wit, by the use of a shovel or by first stopping the machinery, then you will find the plaintiff guilty of contributory negligence, and your verdict will be for the defendant."

There was no error in refusing to give these instructions. It is not true that an employé must always and without qualification, adopt the less dangerous method of doing work. The necessities of the case and attending circumstances may in some cases reasonably require an employé to adopt the more dangerous of two ways. The test in all cases is whether, in view of all the facts and circumstances of the case, it would be the exercise of reasonable prudence to do the work as done, even if it were perhaps a more dangerous way than some other way might have been; hence, to lay down a general rule for the guidance of the jury that it is a want of ordinary care (and therefore contributory negligence) for an employé to adopt the more dangerous way, without further qualification, would have been misleading and erroneous.

For another reason also it was not error to refuse to give these instructions. The court in its charge to the jury fully explained to them the obligations of an employé under circumstances hypothecated in these instructions, and substantially gave to the jury the principle of law attempted to be stated in the instructions refused. There was no occasion for repeating the same again.

[2] The chief and most important act of negligence charged against the defendant by plaintiff, and the one mainly relied upon below and here for a recovery by him, was defendant's failure to cover or otherwise protect the gear wheels near the place where plaintiff was required to work. In view of this fact defendant's counsel asked the court to give this instruction to the jury:

"Even if you find that the defendant was negligent, in that it failed to properly guard the machinery in connection with which the plaintiff was injured, yet if you find that the danger was open and obvious, and the plaintiff knew, or *in exercise of reasonable care ought to have known, of such danger,* and such danger was of such a character as that a reasonably prudent person would not have performed the work which the plaintiff claims to have been performing at the time of the injury and in the manner in which the plaintiff

claims to have performed such work, then you will find the plaintiff guilty of contributory negligence, and your verdict will be for the defendant."

This request had some vicious elements in it:

(1) It devolved upon the employé the obligation of exercising reasonable care to ascertain whether a piece of machinery and its surroundings with or about which he was required to work were dangerous. This is not the·law. It is well settled by repeated adjudications in this court that a primary duty is imposed upon the master to furnish the servant a reasonably safe place to work in and reasonably safe appliances to work with, or at least to use reasonable care to do so, and that an employé may confidently rely upon the master doing so, and is under no obligation at the outset to make a personal inspection or to exercise any degree of diligence to affirmatively ascertain whether he has done so. It is only when the employé actually knows of defects constituting negligence on the part of the employer, or when they are plainly observable by him, that his continuance in the work constitutes contributory negligence. Republic Elevator Co. v. Lund, 116 C. C. A. 373; 196 Fed. 745, 45 L. R. A. (N. S.) 707, and cases there cited.

(2) This instruction, if otherwise correct, was predicated upon no substantial evidence. Not a particle of evidence appears in the record tending to show any negligent or careless act or motion by plaintiff in the matter of cleaning out the· pit which in any manner exposed him to· the danger of the gearing. He was engaged at his task by the express command of his superior, and was, so far as the proof shows, doing it with all reasonable care and caution. His injury was the result of his being required to do the work in close proximity to the dangerous and unprotected gearing, and seems to have been purely incidental to defendant's failure to properly guard that gearing.

(3) The court in its general charge had fully stated the law governing the doctrine of contributory negligence applicable generally to all the phases of the case and properly refused to single out and make special comment upon any single fact bearing on it. Perovich v. United States, 205 U. S. 86, 92, 27 Sup. Ct. 456, 51 L. Ed. 722. This is specially true ·when there is no evidence tending to show any contributory negligence in that particular phase of the case.

[3] Defendant's counsel also requested the court to give this instruction:

"The plaintiff is· held by the law to have assumed the usual and ordinary risks incident to the business in which he was engaged, and if you find that the injury of which· he complains was the result of an ordinary risk or danger of his employment, then he cannot recover and your verdict must be for the defendant."

The court refused to give this instruction and due exception was saved. There was no error in refusing to give this instruction. Section 4999a2 of the Iowa Code, Supplements 1907 and 1913, provides as follows:

"It shall be the duty of the owner, agent, superintendent or other person having charge of any manufacturing or other establishment where machinery is used, to furnish and supply or cause to be furnished and supplied therein, belt shifters or other safe mechanical contrivances for the purpose of throwing

belts on and off pulleys, and * * * all saws, planers, cogs, gearing," etc., "shall be properly guarded."

The record, as already pointed out, discloses no evidence of negligence on the part of the plaintiff in cleaning out the pit with the implement provided for his use. He was apparently doing it as well and as carefully as he could under the conditions surrounding him. In the absence of the statute of Iowa just quoted his injury would probably be classified as accidental.

[4] The Supreme Court of Iowa, in construing this statute, has held that the defense of assumption of risk is not available to a defendant who has failed to comply with it and to properly guard its machinery when injury results. Poli v. Numa Block Coal Co., 149 Iowa, 104, 127 N. W. 1105, 33 L. R. A. (N. S.) 646; Stephenson, Adm'r, v. Brick & Tile Co., 151 Iowa, 371, 130 N. W. 586; Verlin v. U. S. Gypsum Co., 154 Iowa, 723, 135 N. W. 402. Where the highest judicial tribunal of a state has placed a construction upon its statutes, the courts of the United States must follow that construction. This we did in a case similar to the present one, where we held that the defense of assumption of risk was not available to a defendant who had failed to comply with a statute similar to the one now before us, after the Supreme Court of the state had so held. Columbia Box Co. v. Saucier, 213 Fed. 210, 129 C. C. A. 656.

In the progress of the trial the defendant's counsel called Mr. Ribble, an ex-factory inspector, as a witness, and asked him whether in his opinion the gearing in question in this case required guarding, and whether guarding it would eliminate the danger incident to being caught in the gears, and whether he as factory inspector ever gave any direction to the Cement Company with respect to guarding their gearing, etc. These questions were objected to by plaintiff's counsel, disallowed by the court, and due exceptions taken. There was no error in these rulings. The beneficent statute of the state invoked by plaintiff cannot be frittered away by opinions of an executive officer.

Defendant's counsel have urged some other objections to the proceedings below, all of which have been duly considered and found to be without substantial merit.

The judgment is affirmed.

⬤⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes