The People of the State of New York, Respondent, v. Alfred H. Ashworth and Another, Appellants.

Fourth Department, May 4, 1927.

Crimes — conspiracy and grand larceny in first degree — one of defendants was mill superintendent and general manager of corporation, which had machinery to make wool into yarn — defendants were indicted under Penal Law, § 1290, subd. 1, on theory that using machinery and employees of corporation to spin yarn, constituted larceny — conspiracy charge fails, since no overt acts were alleged in connection therewith — acts of defendants did not constitute larceny under said section 1290.

The defendants have been convicted of conspiracy and grand larceny on a charge that they used the equipment, machinery and laborers of a corporation of which one of the defendants was superintendent and general manager for the purpose of spinning wool into yarn, for which services the defendants were personally paid by the owners of the wool. The conviction for conspiracy cannot be sustained since the indictment does not charge any overt acts and for the further reason that the evidence does not sustain that conviction.

The conviction of grand larceny cannot be sustained since the acts of the defendants do not constitute a violation of subdivision 1 of section 1290 of the Penal Law. The unauthorized use of the equipment and laborers of the corporation by the defendants did not constitute a taking of personal property from the possession of the true owner or the withholding or appropriating to their own use or that of any other person, other than a true owner, of any personal property.

Appeal by the defendants, Alfred H. Ashworth and another, from a judgment of the County Court of the county of Cattaraugus, rendered on the 22d day of November, 1926, convicting them of the crimes of conspiracy and grand larceny in the first degree, with notice of intention to bring up for review an order entered

in said clerk's office on the 8th day of November, 1926, overruling defendants' demurrer to the indictment, and also from an order denying defendants' motion to dismiss the indictments upon the minutes of the grand jury.

*Henry P. Nevins* [*Frederick W. Kruse* of counsel], for the appellants.

*A. Edward Krieger, District Attorney* [*John W. Ellis* of counsel], for the respondent.

TAYLOR, J. The defendant Harry Ashworth was the mill superintendent and general manager of the A-O Worsted Co., Inc., and his brother, the defendant Alfred Ashworth, was the vice-president and principal stockholder of the Midland Wool Combing Co., Inc. The Lockport Felt Company of Newfane, N. Y., made an agreement with these defendants for the combing by the Midland Company of approximately 20,000 pounds of raw wool. The wool was subsequently shipped from Newfane and delivered to the Midland Company at Salamanca, and combed.

Later an agreement was entered into between the Lockport Company and these defendants for spinning the same wool into yarn at a price of twenty cents a pound. The Midland Company had no facilities for spinning wool and all of the yarn was spun in the plant of the A-O Company by the defendants, who used for that purpose the machinery, the spinning facilities, and the laborers of the A-O Company. The wool, when spun, was shipped to the Lockport Company, and that company paid the Midland Company by check for the work, upon invoices rendered.

As a result of this transaction, these defendants, with three others, were indicted for conspiracy and grand larceny; for conspiring to cheat and deprive the A-O Worsted Co., Inc., of its money and of its property and the use of it; and for stealing the money and the use of the property. These defendants demurred to the indictment and the demurrer was overruled. Upon the trial they were found guilty by a general verdict, and have appealed.

The verdict of the jury has established that the spinning was done without the knowledge of any of the A-O Company's officers (except Harry Ashworth, its mill superintendent), and that the defendants entered into and carried through a corrupt arrangement to spin the wool for the Lockport Felt Company secretly in the plant of the A-O Company, to conceal from the officers of the A-O Company the contract and the work done pursuant to it and to appropriate to themselves the use of the plant, the spinning facilities and the workmen of the A-O Company, a property right.

The Penal Law, section 1290, reads in part as follows:

" A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:

" 1. Takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing; or secretes, withholds, or appropriates to his own use, or that of any person other than the true owner, any money, personal property, thing in action, evidence of debt or contract, or article of value of any kind;   *   *   *

" Steals such property, and is guilty of larceny."

In addition to presenting defenses of fact, the appellants contended at the trial, as they do here, that as a matter of law no conspiracy was alleged or proved. Two crimes were charged, conspiracy and grand larceny. The first two counts in the indictment relate to the conspiracy, and the third and fourth counts to the grand larceny. In the first two counts no overt act is pleaded. Certain acts are set forth in counts three and four, relating to the grand larceny; but there is no allegation that such overt acts were performed in furtherance of the conspiracy. Therefore, it would seem that the conspiracy counts were defective (*People* v. *Willis,* 158 N. Y. 392; Penal Law, § 583; Code Crim. Proc. § 398), although the demurrer was properly overruled. (*People* v. *Rosenheimer,* 209 N. Y. 115.) Defendants also claim that the spinning facilities were real property, certainly not personal property, and that no larceny has been proved.

The charge in count fourth of the indictment that the $2,097.92 received by the Midland Company for spinning was stolen by defendants from the A-O Worsted Company, must be dismissed at the outset. The case was tried upon the theory that the spinning facilities of the A-O Company were surreptitiously used and " appropriated "— not that the proceeds of a permitted use were stolen. However, if the proof was sufficient under either larceny count the general verdict of guilty is good. (*People* v. *Mills,* 91 App. Div. 331; affd., 178 N. Y. 274.)

The next question, then, for consideration is this: " Was the use of the spinning facilities of the A-O Worsted Company a subject of larceny under section 1290 of the Penal Law? "

The defendants " used " the personal property of the A-O Company, and this is perhaps the only word which precisely and accurately characterizes their activities with respect to that company's factory equipment. The word " appropriate " means " to take to one's self,"— claim to the exclusion of others. (Webster's New International Dictionary.) The defendants

appropriated the use of the A-O Company's property, even though temporarily, to the exclusion of others. Can it be fairly said that this appropriation of use of the plant constituted larceny of personal property within the meaning of the statute?

It will be noted that the verb " use " does not appear in section 1290 of the Penal Law. The significant words which characterize the crime defined, considering the instant facts, are " takes from the possession of the true owner "—" withholds, or appropriates to his own use, or that of any person other than the true owner, any * * * personal property." These expressions connote something more than merely *using* personal property of the true owner. They refer to physical taking or acquiring of some concrete article.

We must bear in mind also that asportation is an essential element of larceny. (*Harrison* v. *People*, 50 N. Y. 518; *People* v. *Mills*, 178 id. 274.) Asportation, in larceny, is any appreciable changing of the location of the property involved, with felonious intent, by the person charged with the commission of the crime. The taker, at some particular moment, must have obtained complete, independent and absolute possession and control of the property, adverse to the rights of the owner. (*United States* v. *Cohen*, 274 Fed. 596.)

It may be conceivable that if these defendants stole the use of the spinning facilities of the A-O Company, they carried the " use " away, or appreciably changed its location, although the work was all done on the premises of the A-O Company. But to conceive this requires a certain intellectual flexibility which is probably not possessed by the average person.

This brings us to a consideration of the question whether a mere property right, as distinguished from physical property is the subject of larceny, is " personal property." Personal property is defined in paragraph 1 of section 39 of the General Construction Law, as follows: " The term personal property includes chattels, money, things in action, and all written instruments themselves, as distinguished from the rights or interests to which they relate, by which any right, interest, lien or incumbrance in, to or upon property, or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, wholly or in part, and *everything, except real property, which may be the subject of ownership.*"

There is a very comprehensive definition, for it includes intangible property as well as tangible. (*Matter of Bronson*, 150 N. Y. 1, 15.) Electricity and gas have been held to be the

subject of larceny. (L. R. A. 1918C, 580.) Perhaps some court may soon hold that a property right, through a license in a radio wave length, may be stolen. It is reasonably clear, nevertheless, that all intangible personal property is not the subject of larceny, at least under section 1290 of the Penal Law as now worded. For instance, the right to produce oil is personal property. (*Wagner* v. *Mallory*, 169 N. Y. 501; Gen. Constr. Law, § 39, ¶ 2.) But it seems that it would be impossible to steal such property. Good will is personal property. (*People ex rel. Johnson Co.* v. *Roberts*, 159 N. Y. 70.) But if an unscrupulous competitor steals the good will of a rival business is he guilty of larceny under section 1290 of the Penal Law? A leasehold interest in land is personal property. (*Matter of Althause*, 63 App. Div. 252; affd., 168 N. Y. 670.) But there can be no larceny of such an interest or right. A mere credit is not the subject of larceny at common law. (*Higbee* v. *State*, 74 Neb. 331.)

Take the case of a franchise. This is an incorporeal hereditament, "intangible, invisible, * * * unseen, without form or substance, and, as it were, the mere breath of the Legislature." (*People ex rel. Met. St. R. Co.* v. *Tax Comrs.*, 174 N. Y. 417.) It is not easy to conceive of such a thing being the subject of larceny.

Personal property has been variously defined. That which may be the subject of larceny is well comprehended in the following statement (36 C. J. 737): It " should have corporeal existence, that is, be something the physical presence, quantity, or quality of which is detectable or measurable by the senses or by some mechanical contrivance; for a naked right existing merely in contemplation of law, although it may be very valuable to the person who is entitled to exercise it, is not a subject of larceny."

Conspiracy has neither been pleaded nor proved. Larceny, under section 1290 of the Penal Law, has not been proved. The judgment of conviction should be reversed and the indictment dismissed.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment and orders reversed on the law, indictment dismissed, bail exonerated and defendants discharged from custody.